JOSEPH P. GALLAGHER *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

OCTOBER 23, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

CONDON, C. J.   This is a petition for certiorari to review a decision of the zoning board of review of the city of Pawtucket granting the application of Koppelman Realty Co. for an exception or variance under the zoning ordinance for the construction in a residence B district of a supermarket and an accessory parking area with a capacity of approximately 220 cars.   We issued the writ and pursuant thereto the board has duly certified all the records of its proceedings pertaining to such application.

The land in question is a tract of approximately 97,000 square feet consisting of lots numbered 406, 407 and 620 on assessors' plat No. 63, and is bounded on the north by Pidge avenue, on the south by Lafayette street, on the west by Dartmouth street, and on the east by East avenue. It is presently used for a wholesale and retail florist's business and was so used prior to the enactment of the zoning ordinance in 1928. The business is conducted by Joseph E. Koppelman, Incorporated to which the realty is leased by the applicant Koppelman Realty Co.

Both corporations are owned by Elijah C. Koppelman, who testified in support of the application. According to his testimony the florist business has become unprofitable. He would not say that the realty company was suffering any loss. However, he contended that the property as it is presently developed could only be used for the florist business and since this had now become unprofitable he desired to devote the land to a beneficial use by demolishing the existing buildings and developing the entire tract for a supermarket to be conducted by The Great A & P Tea Company.

The record shows that there are a number of small businesses on East avenue to the south of the applicant's tract but they are nonconforming uses having been in existence prior to the enactment of the zoning ordinance. Since such time the development along that portion of East avenue has been exclusively residential. The easterly side of that avenue directly opposite applicant's tract is in a residence A zone, which is the highest class zone in the city.

Although East avenue is a main highway it is recognized generally as a high-class residential street up to and including the sections of the Sayles plat and the Oak Hill plat, several hundred feet to the north. There is no evidence of any invasion of this general area by lower class use, nor is there any such evidence with reference to the entire residence B zone to the west of East avenue in which the ap-

plicant's land is situated. While there is evidence of a few widely scattered business and industrial uses therein, most of which are not within the immediate vicinity of the applicant's land, they are all nonconforming uses which existed prior to the enactment of the zoning ordinance.

In the face of this record we find it difficult to understand upon what legal basis the board granted the applicant permission to abandon its present nonconforming use. We are convinced that there has been no showing of hardship within the meaning of that term as it has been construed by this court in *Heffernan* v. *Zoning Board of Review,* 50 R. I. 26, and *Winters* v. *Zoning Board of Review,* 80 R. I. 275.

We find no evidence in the record that the applicant is presently deprived of all beneficial use of its land or will be unless it can be used for the proposed supermarket in the event that Joseph E. Koppelman, Incorporated decides to discontinue the florist business. On the contrary the uncontradicted evidence is that the realty company is presently deriving a profit from the lease of the premises to the florist company and there is satisfactory evidence in the record that if the nonconforming use were discontinued the land could be profitably developed for residential purposes in accordance with the requirements of the ordinance.

It is true that there is a conflict in the evidence whether such a development would be as profitable as the proposed use for which the variance is sought, but even if such evidence were uncontradicted it would not be sufficient to prove hardship. "It is well settled in this state that an application for a variance will be denied where the only evidence in support thereof is that the provisions of the zoning ordinance when applied to the particular property in question will result in a less profitable use thereof." *Berard* v. *Zoning Board of Review,* 87 R. I. 244, 139 A.2d 867, 869. On this phase of the case we are clearly of the opinion that the board erred in their finding: "That the literal enforcement of the ordinance would cause an unnecessary hardship

on the applicant insofar as the present use of the premises is of a commercial nature."

However, the applicant contends that the board's decision may nevertheless be sustained as an exception in accordance with the provisions of §26.18 (8) (a) and (b) of the Revised Ordinances 1953. Under those provisions the board may "determine and vary the application of the regulations established in harmony with their general purposes and intent" and "(8) Approve in any district an application for any use or building which the board of review finds: (a) To be in harmony with the character of the neighborhood, appropriate to the use or buildings permitted in such district, and possessive of a reasonable tendency towards promoting the public convenience, the public welfare or the public health; (b) Where such use or building is reasonably necessary for the convenience or welfare of the public * * *."

In our examination of the record we have been unable to find any evidence upon which the board could reasonably base findings that would comply with the above provisions. On the contrary the evidence appears to prove conclusively that a supermarket in this area, together with a parking lot accommodating 220 cars, and reasonably expected to produce a steady flow of traffic to the extent of 2,000 cars in and out of the lot each week, would not harmonize with the permitted uses in the neighborhood and would scarcely promote either the public health or the public welfare. Nor do we find any evidence that would tend to show that the proposed use in this particular area is reasonably necessary for the public convenience. All the evidence on this latter point was to the contrary. No witness testified nor was any showing otherwise made that a supermarket is needed there. If the board of their own knowledge had some grounds for finding such a need they have failed to set them out in their decision. We have heretofore held that unless a zoning board sets out in the decision the ground or grounds on which they based it, or unless such grounds in-

disputably appear in the record, the decision cannot be sustained. *Petrarca* v. *Zoning Board of Review*, 78 R. I. 130.

We are therefore of the opinion that the decision is without any legal evidence to support it either on the ground of a variance or of a valid exception under the above-mentioned provisions, and hence it is quashed as arbitrary and an abuse of discretion.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the records which have been certified to this court are ordered returned to the board with our decision endorsed thereon.

*J. Frederick Murphy,* for petitioners.

*John A. O'Neill,* City Solicitor, for respondent.

*William R. Goldberg, Ronald R. Gagnon,* for applicant.